3-18-0602 Stephen Creighton v. The People of the State of Illinois, Illinois State Police, and the Illinois Attorney General Appellants. Uh Ms. Chenevert, is that how you pronounce your name? It's Chenevert, yes. Chenevert. Good morning and may it please the court. I am Assistant Attorney General Caitlin Chenevert and I represent the appellants. Without holding an evidentiary hearing or admitting any documents into evidence, the circuit court found that the Illinois Sex Offender Registration Act was unconstitutional as applied to Plaintiff Stephen Creighton, purportedly based on a Such a claim, however, must fail because the Illinois Supreme Court has held that the Illinois Sex Offender Registration Act is not punishment. That fatal flaw and plaintiff's petition aside, the circuit court's June and September orders should be vacated because the Illinois Supreme Court has made clear that a court may not find that a statute is unconstitutional as applied to an individual without first making findings of fact which requires an evidentiary hearing. Moreover, neither order complied with all portions of Illinois Supreme Court 18. First, plaintiffs' as-applied constitutional challenge must fail, and so the circuit court's reliance on the Tedder decision was misplaced because the Illinois Supreme Court has held that SORA is not punishment. As recently as 2013 in People v. Cardona, the Supreme Court held that SORA is not punishment, and instead it is a regulatory scheme designed to foster public safety. Tedder is no longer good law. It was sent back. That's correct. The third district's decision in Tedder, I just feel strongly as expressed in my dissent, um, the merits of our decision on that point, whether SORA was or was not punitive, that's been set aside and the case was remanded to us. That is correct, and I understand that this court has revisited the decision in Tedder as well as in the Kochivar case, which was referenced below during the hearings, and in revisiting those decisions, yes, this court has vacated the portions of those decisions that previously analyzed the as-applied constitutional challenge brought by those defendants. Yes, so that is that is correct, right? Correct. Aren't you saying that in this case the problem is there was nothing under oath? When you say evidentiary hearing, there were no affidavits presented, nothing under oath, there were allegations in the pleadings. Is that right? That is correct, Justice Carter. So in addition to the fact that these types of challenges brought under the Eighth Amendment and Proportionate Penalties Clause appear to be foreclosed by the Illinois Supreme Court, that aside, should this court decide that Mr. Crichton should be allowed to proceed with an as-applied constitutional challenge in this case, this court should vacate the June and September orders and remand the matter back to the circuit court for further proceedings, as you explained, because there was no evidentiary hearing and the circuit court admitted no documents into evidence upon which it could make a finding of fact. In other words, if we remand this back to the trial court to take affidavits and or evidence in this case, have a hearing on this matter, there are no cases that suggest they're foreclosed from at that point making an as-applied constitutional challenge, given the fact that none of the other cases foreclose the possibility of someone indicating under their circumstances this becomes unconstitutional. Isn't that correct? I believe, Your Honor, you are correct that there is no specific holding stating that this type of challenge could not be brought in this particular instance by this individual. Our argument, however, as we argued below to the circuit court and as we mentioned in our opening brief here, because the Illinois Supreme Court several times and as recently as 2013 has held that the Illinois Sex Offender Registration Act does not constitute punishment, that would appear to foreclose the ability for an individual to bring an as-applied constitutional challenge under those provisions. Again, however, as you explained, should this court decide otherwise and determine that such a challenge could proceed in the circuit court, it would require an evidentiary hearing in circuit court to allow the circuit court to hold a hearing and entertain evidence so that it could then make a finding of that. Yeah, because it's my understanding, and correct me if I'm wrong, that the cases from higher authority don't seem to me to indicate that there could never be a challenge on an as-applied situation, but it would have to be dependent on the unique circumstances of that individual case from a constitutional standpoint and has to be brought, would have to be brought that way. And because the courts have said what happens under a SOAR, what happens under registration, that's all collateral to the, those are all collateral matters, correct? In other words, the fact of registration, that those are collateral to the conviction, is that correct? Yes, that's my understanding of the Supreme Court's recent decision in Bingham. It does hold that the ability to challenge a SOAR registration requirement in conjunction with the criminal appeal, that's not a possibility. So, that is correct. And then I think the distinction is, again, as we stated below and in our opening brief, it appears based on the Illinois Supreme Court's holdings that the Sex Offender Registration Act in Illinois does not constitute punishment that would foreclose an individual's ability to proceed on an as-applied constitutional challenge under the Eighth Amendment or the Proportionate Penalties Clause. Go ahead. No, I was going to say though, but however, should this court disagree and feel that that is an appropriate vehicle for an individual to challenge their placement on the registry, then as your Honor stated, that would require the ability for the Circuit Court to entertain evidence and hold an evidentiary hearing. Yeah, the reason I was asking these questions, it somewhat appears to me that your argument is in Illinois, no one could ever challenge the registration in Illinois. I mean, here we have a guy 20 years ago who was briefly under a year in Illinois and hasn't been in any problems since, and the State Department prevents him from seeing his family in Thailand because of the registration in one state, a state where he has little contact. The other two states, there's not a restriction at this point, isn't that correct? Yeah. So I'll first answer the last question that your Honor asked. I do believe, again, based on the allegations and the information we have in this record, that Mr. Creighton is no longer required to register in Louisiana. It is unclear whether he is still required to register in Florida. I believe if you go onto the Florida Sex Offender Registration website, there is somebody with Mr. Creighton's name who still shows up, and it shows that there was a Louisiana conviction. It was the underlying conviction. So he may still have to be registered in Florida. Again, it's hard to say for certain based on the fact that there was no evidentiary hearing, but so he does appear at least possibly to still be needing to register in Florida as well as I don't believe that the argument in this case goes as broad as saying that an individual may never be able to bring an as-applied constitutional challenge to be removed from the sex offender registry. It's simply based on the Illinois Supreme Court's holding that this act does not constitute punishment that may be foreclosed under the Eighth Amendment or the ever be made in Illinois under your view for a person who has like over 20 years, no offenses, and are they totally foreclosed from ever? I mean, what's an example you can give where they can challenge their registration ever? Do you have an example of your position? As far as a case that's been another case in Illinois that's been. No, not a case that's been ruled on. What is a factual example of the state's position where a person could possibly challenge their registration status as an applied situation? You say you're not foreclosing everything. What's left under your view? Well, I think to the extent that there may be another constitutional provision under which a person could bring an as-applied constitutional challenge. Counsel, I'm sorry. I'm getting confused, which often happens. As I read your brief, prayer for relief just requests reversal and remand for new proceedings and won't the state have the opportunity to make this argument there? I don't see that you're asking us to go that far in this case if we determine the procedural requirements weren't met. What's the remedy you want for us to apply? So certainly, should this court hold that Mr. Creighton cannot proceed with this type of constitutional challenge, then the relief would be that defendant's motion to dismiss plaintiff's granted, in which case that decision should be reversed by the circuit court. However, should the court decide that Mr. Creighton can proceed with this type of as-applied constitutional challenge, then vacature would be appropriate to remand the matter back to the circuit court to allow them to allow the circuit court to proceed with an evidentiary hearing. So you believe that we have to reach the issue of whether SORA is or is not punishment in this appeal? Is that your position? I do not believe that the court has to reach that decision, has to reach that issue here because based on the fact that the circuit court's orders do not comply with all of circuit rule, I'm sorry, Illinois Supreme Court Rule 18, and because there was no evidentiary hearing, those facts alone would warrant remand back to the circuit court. And then again, perhaps defendants could raise again the question of whether Mr. Creighton may proceed under these constitutional, this way, with an as-applied constitutional challenge under these provisions. That could be decided. Thank you for clarifying that for me. I thought that under Bingham, a simple action was allowed to reach these kind of as-applied issues. I apologize for my voice, but can you hear me? I can, but would you mind repeating the start of your question? If I can, yeah. I thought that one of the exceptions under Bingham was a civil action brought by a defendant, a criminal defendant. Yes, and I do believe that the Illinois Supreme Court's holding in Bingham leaves open a separate civil action outside of an appeal based on the criminal conviction. Yes, but again, this challenge or this petition was brought as an as-applied constitutional challenge alleging violations of Mr. Creighton's Eighth Amendment rights as well as the from the state. Because the Illinois Supreme Court has held that the SORA statute does not constitute punishment, then that would mean that a challenge alleging that the statute violates those constitutional clauses would perhaps not be allowed. But again, as stated, should this court disagree and find otherwise, and that a person should be allowed to proceed under those provisions, then at the very least, vacatur and remand is warranted here. So I can try to clarify this. As I understood it, the first part of your argument, you have the first argument and then you have the second argument by default. The first part of your argument is the order that you were requesting from us is a remand to the circuit court directing the trial court to dismiss this case because it can't be brought under the Eighth Amendment, etc. Isn't that correct? That is correct, your honor, yes. So you were asking us to remand with a direction just to dismiss the thing and the whole thing would be over. Although we could actually do that under the powers of the court. We could do that here too because we have the second part of your argument is if we don't accept that it's forever foreclosed, and this is a civil action, not a criminal appeal, then it would be remanded for an evidentiary hearing, correct? Yes, that is correct, your honor. Thank you. Thank you. Are there any more questions, judges? No, thank you, Justice Litton. Thank you, Ms. Jennifer. Thank you. Mr. Sullivan. May it please the court, my name is Kevin Sullivan. I am the attorney for Stephen Alan Creighton, in this case, the plaintiff in this matter that was brought before the trial court. By way of just a short statement, I'm going to be very brief this morning. I have a very talking, so bear with me if you can. If for some reason my voice becomes garbled, please let me know. I'm going to do the best I can. This case started out with a very strange procedural history in which a petition, direct petition for removal from the sexual predator designation or the SORA was brought before the trial court, the circuit court of Peoria County. You can have a seat. And briefly, we take the position that the reasoning of this court in Tedder, the reasoning, although it was sent back, I believe, or at least my interpretation is for collateral or for procedural grounds, because it was not a direct appeal. It was, they were arguing the collateral consequences of a conviction. And the Supreme Court said, that's not correct. This is a different situation. So we believe nevertheless, the reasoning by this court in Tedder and the other cases that followed is still valid reasoning and could very well be applied. At least the door is open to apply it to a situation like this. By what court though, counsel, are you asking us to apply it or are you asking for a remand for a new hearing with those arguments being in terms of the case law? Well, I understand that. And I believe this court would have the authority to decide it since it is a different proceed brought through a different procedural mechanism to decide similar to the way this court did in Tedder, Tedder, excuse me, and the other case that followed. So I believe this court has the authority, certainly a trial court could do so. And my position would be that a trial court likely very well would. And we read right back here again, I think it'd be better to be decided by this court on the merits, so to speak. Well, when you say decided on the merits, how do we do that? When there were no facts presented by affidavit or trial, or evidence introduced in this case? The only things that we know are from that's correct. And they're virtually undisputed. The pleadings that is, the ultimate difficulty here is this, we cannot get Mr. Creighton to the circuit court of Peoria County to testify. Because as I understand it, he's prohibited from reentering this country at this time. Where is he now? He is in the in a field area. He's out in a remote area of Southeast Asia. Essentially homeless, as I understand it, he's in Cambodia. And trying to communicate with him is very difficult. He was denied returning to his home where he's been for almost 20 years in Thailand. And again, it's very spotty being able to communicate. So that's, that's occasionally an email is about all we can do. Well, this is a civil proceeding and wouldn't an evidentiary deposition be something that could be agreed to, to work around that difficulty? We could if we if we could communicate, I mean, and I think you're going to have the same facts presented that were presented in the petition that essentially was undisputed. So having said that, it's going to be difficult to have an evidentiary hearing, we could attempt to submit affidavits, which would eventually be a signed statement similar to the petition that was essentially filed and uncontested in this situation. Is that the reason why the hearing didn't occur in the trial court? Is that the logical reason behind no evidence and no sworn testimony? Because we couldn't get a client present? Yes, it is. Yes. And it's, it's the government preventing him from coming to a government hearing. And I don't know that there's a way around that. It's obviously involving the federal government. And trying to get them to, you know, I may be preaching to the choir. But, you know, it trying to get the federal government to allow him in would probably be a Herculean task that I don't think would be very easy to accomplish under, you know, under the ice rules and the immigration rules and things like that. I appreciate your answer very much. With these oral arguments, we get a chance to drill you a little bit. And occasionally, as in this situation, I learned something new from you. So thank you. As I understand it, the State Department prevented him from getting into Thailand. What happened was that he was in, he came to Chicago to see his mother, who was essentially dying. He hadn't seen her. Mother since has died. On his way back to Thailand, immigration contacted Thailand and said, he's on the Illinois sex offender registration list. And when he landed in Thailand, they said, you cannot stay. He then had to find a place to go. He was not allowed to return to this country. My understanding is he went to Jamaica for about six months. And from there, he was able to get somehow to Cambodia. How he got there, I do not know. Part of the reason I don't know is because it's difficult to communicate with him. But he is essentially a man without a country and a man without a home right now, because of the call that immigration made while he was in the air en route back to Thailand. So he can go down the Ho Chi Minh Trail along the border between Cambodia and Vietnam? I think he can. And probably there's, I can't remember the name of the river, he can probably try to navigate that as well. But I think he's very limited in where he can go. If he does enter, if he does enter Thailand and is caught, I understand it's a life imprisonment, no parole type sentence in a Thai prison. And I think probably enough said on that. The real reason, and I realized the Supreme Court has said that the sex offender registration requirement is not punitive. It's regulatory and it's designed to protect society. Much like in a DUI, the implied consent statute, or much like a summary suspension. In reality, it is a punishment. And again, Mr. Creighton had very little contact with the state of Illinois. If we learn in law school regarding civil jurisdiction, minimum contacts nearly 20 years ago, and this is having a worldwide effect upon him. We believe that the proceedings in the trial court were conducted correctly. They were conducted, given all the limitations that were some of these challenges were not raised in the trial court by the state. We believe that those would be waived and we would ask the court to affirm the trial court's decision. And if there's no other questions, I will end my argument and thank you for your time. I do have a question counsel, and I'm sorry, I know you're not feeling well. That's okay. Are there proceedings in Florida as well that are similar to these? My understanding is Florida had a 10 year requirement. He was a fender, not a predator. And I believe what I've been advised along the way is those have lapsed, even though his name appears here, those that's not holding him back. That's fine. You've answered my question. Thank you. Thank you, Mr. Sullivan. Thank you, Mr. Chairman. Any response? Yes. Thank you, your honor. Just a few points in response. I would first note, Mr. Sullivan mentioned a couple of times that the pleadings were uncontested. I don't believe that is true below. In response to the amended the operative petition, the amended petition, defendants moved to dismiss that petition. But I don't believe that means that it's uncontested that there was there were any factual or any allegations made in the petition that we were admitting to or not contesting. Instead, this was preceded below on a motion to dismiss. And as we noted in our brief below, and is reflected in the record, when this matter was before the circuit court, we did ask for an evidentiary hearing to provide some answers and to provide some more facts upon which the circuit court could make its decision. One thing that you did mention below and that also was raised in our brief is the question of why what effect if any, the Illinois registration had on Mr. Crichton's ability to reenter Thailand. The the letter from the Department of Homeland Security to the Thailand immigration officials did not mention the Illinois registry. It did not mention the term sex predator. It simply stated that he was a sex offender, based on his underlying conviction in Louisiana. So to the extent that there may be any effect or no effect, excuse me, no effect on the Illinois registry, and Mr. Crichton's ability to reenter Thailand, that is something that requires some evidence and some factual development in order for the court to further analyze this case. Mr. Sullivan didn't mention specifically which arguments he believed the state has waived or forfeited in this case. To the extent that it, again, defendants did ask below for an evidentiary hearing, and that's the same argument that was made here. To the extent that that was meant to reference that there was no argument presented below about the Rule 18 issue, I don't believe defendants were required to file a motion to reconsider after seeing the court's and so it was raised properly here before this court on appeal. Can I ask again, have you given your view in the first part of your argument, what would be an example of a way that anyone could raise a as applied constitutional challenge under the Sex Registration Act in Illinois? How could that happen? Again, if there was, I think, you know, to the extent that there was some other constitutional provision upon which the individual was basing his or her as applied constitutional challenge. Simply here, though, because the Illinois Supreme Court has held that the SORA statute does not constitute punishment, that would appear to foreclose a challenge brought under the Eighth Amendment or the Proportionate Penalties Clause, but to the extent there may be some other constitutional amendment or some other portion of the SORA statute itself that requires reexamination, that may be a different case. Would, under the pleadings from the plaintiff here, it would appear that they're raising an adverse impact on this person because of the registration. That's what they're pleading suggests. Is that right? An adverse impact? Yes, that is. He can't get into the country where his family's located because of the sex offender situation. That would be an adverse impact, correct? I, yes, I agree that would be an adverse impact. I would just note, however, actually, the pleading, relevant pleading in this case, I don't believe even states that there's a belief or that there's an allegation that Mr. Crichton was not allowed into Thailand because of his placement on the Sex Offender Registration Act or on the Illinois Sex Offender Registry. It simply states that the Department of Homeland Security sent Thailand immigration officials this notification, which again makes no reference to the Illinois Registry, and then he was not allowed into Thailand. Again, at the very least, additional evidence and discovery would be needed in order to determine what impact, if any, the Illinois Registry had on that decision. Well, I'm wondering if Louisiana where he was originally convicted and if it's the case in Florida that he's no longer required to register, and if he was no longer required to register in Illinois, where would be, what would pick up the fact that 20 years ago he had a conviction if there's no longer a registry out there indicating so? Perhaps if Illinois was the only registry that he was on, but again, it's actually not clear from this record whether that's true. I understand Mr. Sullivan states his understanding is he's no longer required to register in Florida, but again, doing a search on the Florida registry does show him as still being registered, so that would be another area that there would be required some actual development to determine whether or not the Florida registry had anything to do with the Department of Homeland Security's decision to send that letter. As this record stands right now, there are no allegations under oath. Is that correct? That is correct. I don't believe any of the pleadings here were verified. Counsel, I have one other question for you to kind of follow up on what Justice Carter has been discussing. I'm mindful of the fact that this was decided in 2018 and I'm wondering, do we know the decision by Judge Gorman was used to eliminate the restriction on Mr. Crichton? Do we even have that historical? I mean, they've had two years to use that decision. Do we know where that is at? Or let me ask it this way. Wouldn't an evidentiary hearing allow somebody to probe that issue? Yes, Your Honor. I believe that's correct. All right. Ms. Tafferty, thank you very much. Thank both of you for your arguments today. We will take this matter under advisement. We'll get back to you with a written decision within a short time.